[Cite as *In re Transfer of Structured Settlement of Anderson*, 2020-Ohio-5408.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN THE MATTER OF: | : | Appellate Case No. 2020-CA-15 |
| | : | |
| THE TRANSFER OF STRUCTURED | : | Trial Court Case No. 2020-MI-10 |
| SETTLEMENT OF P. ANDERSON | : | |
| | : | (Appeal from Common Pleas |
| | : | Court – Probate Division) |
| | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of November, 2020.

. . . . . . . . . . .

YALE L. LEVY, Atty. Reg. No. 0065006 and SEAN M. WINTERS, Atty. Reg. No. 0084612, 4645 Executive Drive, Columbus, Ohio 43220 and BOYD GENTRY, Atty. Reg. No. 0071057, 4031 Colonel Glenn Highway, Suite 100, Dayton, Ohio 45431
  Attorneys for Appellant

. . . . . . . . . . . .

HALL, J.

**{¶ 1}** Stone Street Originations, LLC appeals from a judgment of the Champaign County Family Court denying its Application for Approval in Advance of Transfer of Payment Rights, which was filed under the Ohio Structured Settlement Transfer Act. The probate court denied the application based solely on a local rule imposing a blanket policy, which categorically states that an application will not be approved if the transferor is to receive less than 50% of the discounted present value of the transferred payments. We conclude that the probate court failed to consider unknown potentially unique facts or circumstances of this case and therefore failed to exercise its discretion. Consequently, we reverse the trial court's judgment and remand for further proceedings.

## I. Factual and Procedural Background

**{¶ 2}** In April 2020, Stone Street filed an Application for Approval in Advance of Transfer of Payment Rights in the probate court, as required by the Ohio Structured Settlement Transfer Act, and asked the court to set a hearing. According to the application, Paul Anderson is the beneficiary of a structured-settlement agreement under which he is paid $1,500 each month. Anderson agreed to sell to Stone Street 20 years' worth of future monthly payments, beginning on August 1, 2035 and ending on July 1, 2055. The application indicated that the discounted present value of life-contingent future payments was $266,939.82 and that, in exchange for the transfer, Anderson would receive a lump-sum payment of $29,500. Anderson was only 28 years old at the time of the application.

**{¶ 3}** The probate court summarily denied and dismissed the application, saying: "In this Application the transferor is to receive $360,000. And the discounted present value is $266,939.82. The request is that the transferor receive less than 50% of the discounted

present value. Pursuant to Local Rule 50 the Court will not approve said Application if the transferor is to receive less than 50% of the discounted present value."

**{¶ 4}** Stone Street appeals.

## II. Analysis

**{¶ 5}** Stone Street raises three assignments of error on appeal:

I. The Probate Court committed reversible error when it enforced Local Rule 50 and denied the right to a hearing.

II. The Probate Court committed reversible error when it denied the application for approval in advance of transfer of payment rights without a hearing in violation of the Ohio Structured Settlement Protection Act.

III. The Probate Court committed reversible error when it denied the application for approval in advance of transfer of payment rights without a hearing, in violation of Article 1, Section 16 of the Ohio Constitution.

*The Ohio Structured Settlement Transfer Act*

**{¶ 6}** Under the Ohio Structured Settlement Transfer Act, R.C. 2323.58 et seq., a transferee[1] is required to file an application for the approval in advance of a transfer of structured settlement payment rights. *See* R.C. 2323.584(A). After an application is filed, the Transfer Act requires the court to "hold a timely hearing on the application." R.C. 2323.584(B)(1). A transfer of structured settlement payment rights is not valid

---

[1] "Transferee" is defined in the Transfer Act as "a party acquiring or proposing to acquire structured settlement payment rights through a transfer." R.C. 2323.58(T).

unless the transfer has been approved in advance in a final order of a court of competent jurisdiction based on express findings by the court of all of the following:

(A) The transfer is in the best interest of the payee,[2] taking into account the welfare and support of the payee's dependents.

(B) The payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received that advice or knowingly waived in writing the opportunity to seek and receive that advice.

(C) The transfer does not contravene any applicable statute or order of any court or other government authority.

(Footnote added.) R.C. 2323.581.

{¶ 7} With the best-interest finding, the Transfer Act leaves the final approval decision in the sound discretion of the court. Accordingly, we review that decision under an abuse-of-discretion standard. An abuse of discretion has been defined as "conduct that is unreasonable, arbitrary or unconscionable." *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "And an 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.' " *Id.*, quoting *Black's Law Dictionary* 125 (10th Ed.2014).

---

[2] "Payee" is defined in the Transfer Act as "an individual who is receiving periodic payments under a structured settlement * * * and who proposes to make a transfer of the rights to receive those periodic payments." R.C. 2323.58(I).

{¶ 8} The first assignment of error argues that the probate court here erred by adhering to Loc.R. 50 of the Champaign County Family Court, which provides that "[t]he Court will not approve an application for Transfer of Structured Settlement if the transferor[3] is to receive less than fifty percent (50%) of the discounted present value of the payments being transferred."   (Footnote added.)   This is a blanket policy that applies to all applications without exception and without any consideration of the facts or circumstances of each case.

{¶ 9} We recognize that the likely intent of the local rule is to protect vulnerable payees—the same goal as the Transfer Act itself.   Arguably, receiving less than 50% of the discounted present value could be found not in a payee's best interest. In fact, the applicant here would only receive 11% of the present value of the future payments, which, on its face, in the absence of special circumstances like impending death, appears unconscionable. Our concern is that we see nothing in the Transfer Act that would permit a per se rule that a payment of less than 50% of the present value is not in the applicant's best interest. As we said, the Act leaves the approval decision ultimately in the court's discretion. A court is required to determine whether the proposed transfer is in the payee's best interest, R.C. 2323.581(A), and to aid that determination, the court must hold a hearing. R.C. 2323.584(B)(1). A court is not exercising its discretion if it rejects an application based solely on a blanket policy like the one in Loc.R. 50.

{¶ 10} "There is a distinction between the refusal to exercise discretion at all and an abuse of discretion that is, in fact, exercised." *State v. Rice*, 180 Ohio

---

[3] "Transferor" is not defined in the Transfer Act. We assume that this term refers to the "payee."

App.3d 599, 2009-Ohio-162, 906 N.E.2d 506, ¶ 22 (2d Dist.) (Donovan J., dissenting). A court's "blanket refusal" to consider an option before it is a refusal to exercise discretion. *Id.* Where discretion is called for, we have consistently concluded that adherence to a blanket policy is an abuse of discretion. *See, e.g., Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, 97 N.E.3d 474, at ¶ 13 (blanket policy of rejecting no-contest pleas is abuse of discretion); *In re A.K.C.*, 2d Dist. Champaign No. 2016-CA-16, 2017-Ohio-847, ¶ 6 (blanket policy of denying parenting time to incarcerated parents is abuse of discretion); *State v. Rice*, 180 Ohio App.3d 599, 2009-Ohio-162, 906 N.E.2d 506, ¶ 17 (2d Dist.) (blanket policy of denying all requests for intervention in lieu of conviction without a hearing would be abuse of discretion); *State v. Carter*, 124 Ohio App.3d 423, 428, 706 N.E.2d 409 (2d Dist.1997) ("across-the-board" policy of refusing to accept no-contest pleas "constituted an abuse of discretion in that the trial court arbitrarily refused to consider the facts and circumstances presented"). Other Ohio appellate courts have concluded this too. *See, e.g., State v. Jones*, 2013-Ohio-3559, 996 N.E.2d 569, ¶ 20 (6th Dist.) (abuse of discretion to deny defendant's motion for leave to waive his right to be physically present at the trial based on blanket policy requiring defendant's attendance at trial); *State v. Allen*, 8th Dist. Cuyahoga No. 98394, 2013-Ohio-1656 (abuse of discretion to adhere to a blanket policy that no plea negotiations would take place once a jury was impaneled); *State v. Hunt*, 4th Dist. Scioto No. 1536, 1985 WL 8359 (Oct. 22, 1985) (abuse of discretion to reject a plea agreement based solely on the court's "policy of refusing to accept plea agreements after the jury cards are mailed to the prospective jurors in a case"); *Billington v. Cotner*, 32 Ohio App.2d 277, 290 N.E.2d 862 (8th

Dist.1972), *reversed on other grounds*, 37 Ohio St.2d 17, 305 N.E.2d 805 (1974) (abuse of discretion to fail to exercise discretion as to the proper amount of fees).

{¶ 11} Although a probate court has the discretion to reject a transfer application, "it must exercise its discretion based on the facts and circumstances before it, not on a blanket policy that affects all defendants regardless of their situation. In short, the trial court must exercise its discretion in each case." *Carter* at 428. *Accord Jones* at ¶ 19, citing *Billington* at 280 ( "it is within the appellate ambit to determine that a trial judge must exercise his discretion though refraining from telling him how to do it"). Here, the only reason the probate court gave for denying Stone Street's application was the blanket policy in Loc.R. 50. There is nothing in the record before us that would indicate that the probate court considered any potentially unique facts and circumstances of this case. There was no hearing on the application. Therefore, we conclude the probate court erred by failing to exercise its discretion.

{¶ 12} The first assignment of error is sustained.

{¶ 13} Our resolution of the first assignment of error renders moot the issues raised in the second and third assignments of error, and we decline to address those issues.

### III. Conclusion

{¶ 14} The probate court abused its discretion by dismissing Stone Street's application without considering the facts and circumstances here. The court's judgment is reversed. This case is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

TUCKER, P.J. and FROELICH, J., concur.

Copies sent to:

Yale R. Levy
Sean M. Winters
Boyd Gentry
Paul Anderson
Hon. Lori L. Reisinger